UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DWAYNE L. WILSON,

> Plaintiff,

- against -

MAYELA WILSON-POLSON, ELISA
BARNES, in her individual and official
capacities as Court-Appointed Guardian Ad
Litem, CAROL J. GOLDSTEIN, in her
individual and official capacities as Court
Attorney Referee for Family Court of the
State of New York, and OFFICE OF THE
ATTORNEY GENERAL FOR THE STATE
OF NEW YORK

> Defendants.

**MEMORANDUM OPINION
AND ORDER**

09 Civ. 9810 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Pro se Plaintiff Dwayne L. Wilson asserts claims pursuant to 42 U.S.C.

§ 1983 against his ex-wife Mayela Wilson-Polson, court-appointed guardian ad litem

Elisa Barnes, Family Court Attorney Referee Carol J. Goldstein, and the Office of the

Attorney General for the State of New York ("OAG").  Wilson alleges that these

Defendants conspired to violate and violated his constitutional rights by denying him a

relationship with his daughter.

All defendants have moved to dismiss the Complaint pursuant to Fed. R.

Civ. P. 12(b)(1) and (6).  For the reasons stated below, the Defendants' motions to

dismiss will be GRANTED, and the Complaint will be dismissed in its entirety without

leave to amend.

# BACKGROUND

On March 14, 2008, Defendant Wilson-Polson instituted a divorce action against Plaintiff Wilson in New York Supreme Court, New York County, seeking sole legal and physical custody of their daughter Elisha with reasonable visitation rights for Wilson.  (Cmplt., Ex. B (Verified Cmplt. Action for Divorce))[1]  A Special Referee subsequently entered a Judgment of Divorce on October 10, 2008, granting Wilson-Polson sole physical custody and sole legal custody of their daughter with reasonable visitation for Wilson.  (Cmplt. Ex. B (Judgment Divorce))

On October 21, 2008, Wilson-Polson initiated a Family Offense Petition against Plaintiff for "attempted assault, aggravated harassment, harassment, disorderly conduct, menacing, reckless endangerment, stalking, and criminal mischief."  (Cmplt., Ex. A (Fam. Offense Pet.))  In the petition, Wilson-Polson requests, inter alia, that the court enter an order of protection requiring Wilson "not to menace, harass and/or assault her or her child," "not to interfere with the care of her daughter," and to "stay away from her, her child, her home, her daughter's school, her job and/or her daughter's dance class and/or violin class."  (Id.)  On November 25, 2008, the Family Court for New York County entered an ex parte Temporary Order of Protection, expiring January 5, 2009,

---

[1]  On a motion to dismiss, this Court may consider the documents relied upon by Plaintiff and incorporated by reference in the Complaint without converting the motion to dismiss into a motion for summary judgment.  See Sira v. Morton, 380 F.3d 57, 66-67 (2d Cir. 2004) (a "complaint is deemed to include any written instrument attached to it as an exhibit . . . materials incorporated in it by reference . . . and documents that, although not incorporated by reference, are 'integral' to the complaint . . . ." (quoting Fed. R. Civ. P. 12(c))); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 696 (S.D.N.Y. 2002) ("The district court's consideration of documents attached to, or incorporated by reference in, the complaint, and matters of which judicial notice may be taken, [does] not convert the motion to dismiss into one for summary judgment.").

granting Wilson-Polson's petition.  (11/25/08 Temp. Order Prot. at 1-2, Wilson v. Wilson, No. O-11307-08 (N.Y. Fam. Ct. Nov. 25, 2008)).

On December 29, 2008, Wilson-Polson was summoned to appear at a hearing on January 5, 2009, in New York County Family Court before Referee Carol J. Goldstein to answer Wilson's Petition for Modification of an Order of Another Court of Visitation. (Cmplt., Ex. A (Summons))  Wilson's petition requested visitation with his daughter on alternate weekends, three-day weekends where applicable, half the summer, alternate holidays, and dinner one night a week. (Pet. for Mod. of Order, Wilson v. Wilson, No. V-16518-08/08A (N.Y. Fam. Ct. Dec. 29, 2008))

On January 5, 2009, Wilson and Wilson-Polson appeared before Referee Goldstein and agreed by stipulation to the Family Court Order referring the Family Offense Petition and Wilson's Petition for Modification of an Order of Another Court of Visitation to Referee Goldstein to hear and determine.  (Anspach Decl. ¶ 7, Ex. 1 (Stipulation of Parties))  On January 5, 2009, the Family Court appointed Defendant Elisa Barnes guardian ad litem for Wilson and Wilson-Polson's daughter for purposes of Wilson's Petition for Modification.  (Cmplt. ¶ 6; Barnes Decl. ¶ 3)

Wilson entered a special appearance in Family Court on April 27, 2009, challenging the jurisdiction and authority of Referee Goldstein on the grounds that she had "never filed an oath [of] office since January 1979 up to March 2009, thereby breaking New York State Law, and rendering her assumed office vacant, void, unlawful, illegal, and all her actions a deception under color of law and action[s] without jurisdiction."  (Spec. Appearance, at page 4, Wilson v. Wilson, O-11307-08, V-16518-08/08A (N.Y. Fam. Ct. Apr. 27, 2009))  Wilson attached a certification from Norman

Goodman, County Clerk and Clerk of the Supreme Court of New York County, indicating that he found no "Oath of Office" in his records between January 1979 through March 2009 for Carol J. Goldstein. (Spec. Appearance (Oath of Norman Goodman dated Apr. 7, 2009))

On June 1, 2009, Referee Goldstein held a hearing on Wilson-Polson's Family Offense Petition and then entered an Order of Protection, expiring June 1, 2011, ordering Wilson to: (1) stay away from Wilson-Polson, their daughter, the home of Wilson-Polson and their daughter, Wilson-Polson's place of employment, their daughter's schools and other enrichment programs for their daughter; (2) refrain from communicating with Wilson-Polson and their daughter by mail, telephone, email, voicemail, or other means; and (3) refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, disorderly conduct, intimidation, criminal mischief, threats or any criminal offense against Wilson-Polson and their daughter. (Cmplt., Ex. A (Order of Prot.)) The Order noted that Wilson had "not been present in Court" during the hearing.[2] (Id.)

---

[2] Defendant Barnes contends in her sworn declaration that Wilson appeared without counsel at the June 1, 2009 hearing, requested that he "appear specially," "argued that the court lacked jurisdiction," and then "left the court prior to the conclusion of a hearing on Mayela Wilson's family offense petition after being advised that the case would go forward." (Barnes Decl. ¶ 7)

On November 30, 2009, Wilson, proceeding pro se, filed the instant action asserting – pursuant to 42 U.S.C. § 1983 – that Defendants Wilson-Polson, Barnes, Goldstein, and the OAG conspired to violate, and violated, his constitutional rights by denying him a relationship with his daughter.  (Cmplt. ¶¶ 1, 8-12, 30-34, 36-40)

Wilson alleges that he was denied a relationship with his daughter "through a malicious scheme concocted by [Wilson-Polson] and with the assistance of Barnes and Goldstein."  (Id. ¶ 1)  In furtherance of this scheme, Wilson-Polson allegedly "deceptively, falsely, and maliciously" commenced a family offense petition to seek sole custody of her daughter and – in support of that petition – "began to hatch out a malicious plot to create fictional incidents of confrontation each time plaintiff would visit with his daughter."  (Id. ¶¶ 8, 11)  According to the Complaint, Wilson-Polson also would "make up instances of what she created out of her wild imagination of conflict and brutality and make up scenarios of fright and fear and falsify reports of 'being in danger of being assaulted' by plaintiff."  (Id. ¶ 12)

Wilson further alleges that guardian ad litem Barnes, as part of the scheme, "made it her duty to facilitate a successful denial and prejudice of the plaintiff's fundamental parental rights by corroborating a patently false and malicious criminal accusation of abuse. . . ."  (Id. ¶ 6)

Wilson also contends that while "proceeding under color of law, office and authority," Referee Goldstein

> unlawfully used the fright and might of the New York Court Systems to authenticate and facilitate the malicious scheme created by [Wilson-Polson], without due process of law to plaintiff, and proceeding ex parte, performed actions that have denied and disparaged plaintiff of his fundamental right of fatherhood protected by the United States Constitution at the 14th Amendment . . . .

(Id. ¶ 7)  According to the Complaint, "it is common knowledge that the New York State [F]amily Court system has a practice of arbitrarily and capriciously denying [f]athers of African-American descent their parental rights. . . ."  (Id. ¶ 33)

Wilson seeks a declaratory judgment that Defendants have violated his Fourteenth Amendment rights by "depriving [him] of his Fundamental Right of fatherhood," and actual damages of $ 1 million each from Wilson-Polson, Barnes, and Goldstein.  (Cmplt., Prayer for Relief)

## DISCUSSION

On January 29, 2010, Goldstein and the OAG moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing, inter alia, that this Court lacks subject matter jurisdiction under the Eleventh Amendment and that Goldstein is protected by judicial immunity.  (Goldstein/OAG Br. 1-2)  On February 3, 2010, Barnes, proceeding pro se, also moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Docket No. 13)  Wilson-Polson, also proceeding pro se, moved by letter to join the motions to dismiss filed by Goldstein and Barnes.  This Court granted that request on February 9, 2010.[3] (Docket No. 14)

## I.    MOTION TO DISMISS STANDARD

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

---

[3]  The parties also briefed the issue of whether this action is barred under the Rooker-Feldman doctrine.  See generally Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) (citing Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286 (1970));  Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923). This Court does not reach this question, because Wilson's claims must be dismissed irrespective of whether Rooker-Feldman applies.

adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  When

subject matter jurisdiction is challenged, "the plaintiff 'bears the burden of showing by a

preponderance of the evidence that subject matter jurisdiction exists.'"  <u>Arar v. Ashcroft</u>,

532 F.3d 157, 168 (2d Cir. 2008) (quoting <u>APWU v. Potter</u>, 343 F.3d 619, 623 (2d Cir.

2003)).  In deciding a motion to dismiss for lack of subject matter jurisdiction, "a district

court . . . may refer to evidence outside the pleadings."  <u>Makarova</u>, 201 F.3d at 113

(citing <u>Kamen v. AT&T Co.</u>, 791 F.2d 1006, 1011 (2d Cir. 1986)).

 A Rule 12(b)(6) motion challenges the legal sufficiency of the claims

asserted in a complaint.  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on

its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. --, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell</u>

<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  To meet this standard, a

complaint's factual allegations must permit the Court, "draw[ing] on its judicial

experience and common sense," "to infer more than the mere possibility of misconduct."

<u>Id.</u> at 1950.  "In considering a motion to dismiss . . . the court is to accept as true all facts

alleged in the complaint," <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d

Cir. 2007) (citing <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d

83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."

<u>Id.</u> (citing <u>Fernandez v. Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006)).

 Because Wilson is proceeding <u>pro se</u>, the Court must construe the

Complaint liberally.  <u>See</u> <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after

<u>Twombly</u>, though, we remain obligated to construe a pro se complaint liberally." (citing

<u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (<u>per</u> <u>curiam</u>); <u>Sealed Plaintiff v. Sealed</u>

Defendant, 537 F.3d 185, 191 (2d Cir. 2008); Boykin v. KeyCorp, 521 F.3d 202, 213-14, 216 (2d Cir. 2008)).  As in any other case, however, the Court accepts as true only factual allegations and does not accept as true allegations stating legal conclusions.  Harris, 572 F.3d at 72 ("'[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].'" (quoting Iqbal, 129 S.Ct. at 1949)).

## II.   ANALYSIS

### A.   The OAG

Fed. R. Civ. P. 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Complaint here makes no reference to the OAG whatsoever, other than naming it as a party.  Moreover, the Complaint's prayer for relief seeks no damages or other equitable remedies against the OAG.  Because there are no facts alleged against the OAG, and it is not on notice of any claims against it, this Court must dismiss the Complaint in its entirety as to the OAG.

Even if the Complaint contained specific allegations against the OAG, those claims would be barred under the Eleventh Amendment.  "A suit against . . . a governmental entity that is considered an 'arm of the state' for Eleventh Amendment purposes is the equivalent of a suit against the state itself."  Sutherland v. New York State Dep't of Law, No. 96 Civ. 6935 (JFK), 1999 U.S. Dist. LEXIS 7309, at *13 (S.D.N.Y. May 18, 1999) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989)).  "The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. . . . Congress, in passing § 1983, had

no intention to disturb the States' Eleventh Amendment immunity." <u>Will</u>, 491 U.S. at 66 (citations omitted).

           Accordingly, even if Wilson had asserted claims against the OAG – a state agency – his claims would be barred by the Eleventh Amendment.  <u>See</u>, <u>e.g.</u>, <u>Goldstein v. New York</u>, No. 00 Civ. 7463 (LTS), 2000 U.S. Dist. LEXIS 18589, at *4-5 (S.D.N.Y. Dec. 28, 2000) ("The Eleventh Amendment thus bars . . . claims against New York State itself and against the Office of the State Attorney General. . . ." (citations omitted)); <u>Sutherland</u>, 1999 U.S. Dist. LEXIS 7309, at *13 ("[T]he Eleventh Amendment bars Plaintiff's § 1983 claims for civil damages against . . . the Attorney General's Office. . . .").  The OAG's motion to dismiss must be granted.

### B.      Referee Goldstein

           Plaintiff's § 1983 claims against Referee Goldstein must be dismissed on judicial immunity grounds.

           The "Eleventh Amendment bars suits [for damages] against state officials when the state is the real, substantial party in interest." <u>Pennhurst State Sch. & Hosp. v. Haldeman</u>, 465 U.S. 89, 100 (1984) (internal quotations and citation omitted); <u>accord</u> <u>Sommer v. Cnty. of Suffolk</u>, 306 Fed. App'x 660, 662 (2d Cir. 2009) (unpublished opinion) ("[Plaintiff's] suit against [a judge] in his official capacity is barred by the Eleventh Amendment." (citing <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 73 (2000); <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 529 (2d Cir. 1993)).  Such suits may proceed only where (1) Congress, "act[ing] pursuant to a valid grant of constitutional authority," "unequivocally expresses its intent to abrogate that immunity," <u>Tennessee v. Lane</u>, 541 U.S., 509, 517 (2004) (citing <u>Kimel v. Fla. Bd. of Reagents</u>, 528 U.S. 62, 73

(2000)), or (2) a state waives immunity by consenting to suit.  See Alden v. Maine, 527

U.S. 706, 712 (1999).

      The Supreme Court has found that "Congress did not intend § 1983 to

abrogate 'immunities well grounded in history and reason.'"  Bernard v. County of

Suffolk, 356 F.3d 495, 502 (2d Cir.2004) (quoting Imbler v. Pachtman, 424 U.S. 409,

418 (1976) (internal quotation and citation omitted)).  Absolute judicial immunity, which

"exempts judges of courts of superior or general authority from liability in a civil action

for acts done by them in the exercise of their judicial functions," is an ancient principle

that has been "settled doctrine of the English courts for many centuries."  Bradley v.

Fisher, 80 U.S. 335, 347 (1847).[4]

      "In determining whether particular actions of government officials fit

within a common-law tradition of absolute immunity, . . . [courts] have applied a

'functional approach,' . . . which looks to 'the nature of the function performed, not the

---

[4]  There are two exceptions to the general rule:  "First, a judge is not immune from
liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity."
Mireles v. Waco, 502 U.S. 9, 11 (1991) (citing Forrester v. White, 484 U.S. 219, 227-229
(1988); Stump v. Sparkman, 435 U.S. 349, 360 (1978)).  "Second, a judge is not immune for
actions, though judicial in nature, taken in the complete absence of all jurisdiction."
Mireles, 502 U.S. at 12 (citing Stump, 435 U.S. at 356-357; Bradley, 80 U.S. at 351).
The Supreme Court has stated, however, that the

> scope of the judge's jurisdiction must be construed broadly where the
> issue is the immunity of the judge.  A judge will not be deprived of
> immunity because the action he took was in error . . . or was in excess of
> his authority; rather, he will be subject to liability only when he has acted
> in the "clear absence of all jurisdiction."

Stump, 435 U.S. at 356-57 (quoting Bradley, 80 U.S. at 351).  Here, Defendant Goldstein
acted pursuant to the New York Family Court Order of Reference signed by both parties
referring the matter to her and thus she did not act in the "clear absence of all
jurisdiction."  (Anspach Decl., Ex. 1 (Order of Reference/Stipulation of Parties, Wilson v.
Wilson, O-11307-08 (N.Y. Fam. Ct. Jan. 5, 2009))

identity of the actor who performed it.'"  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (internal citations omitted).

The Supreme Court has stated that "the 'touchstone' for [determining the applicability of the judicial immunity] doctrine has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-46 (1993) (quoting Burns v. Reed, 500 U.S. 478, 500 (1991) (Scalia, J., concurring in judgment in part and dissenting in part)).  "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges – that is, because they, too, 'exercise a discretionary judgment' as part of their function."  Id. at 436 (quoting Imbler, 424 U.S. at 423 n.20).  Historically, judicial immunity has "'extended not only to public officials but also to private citizens (in particular jurors and arbitrators). . . .'" Antoine, 508 U.S. at 433 n.8 (quoting Burns, 500 U.S. at 499-500).

Here, Referee Goldstein was charged with resolving a family offense petition and with adjudicating Wilson and Wilson-Polson's custody rights.  The parties stipulated that Referee Goldstein would "hear and determine this action and all future supplemental and violation proceedings concerning this action."  (Anspach Decl., Ex. 1 (Order of Reference/Stipulation of Parties, Wilson v. Wilson, O-11307-08 (N.Y. Fam. Ct. Jan. 5, 2009)).  Referee Goldstein's actions are, accordingly, protected by judicial immunity because she was performing "'the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'"[5]  Antoine, 508 U.S. at 435-46

_____

[5]  Wilson argues that Referee Goldstein lacked jurisdiction because she "never filed an oath [of] office."  (Spec. Appearance, at page 4, Wilson v. Wilson, O-11307-08, V-16518-08/08A (N.Y. Fam. Ct. Apr. 27, 2009)).  Assuming arguendo that this allegation is

(1993) (quoting <u>Burns</u>, 500 U.S. at 500); <u>see</u> <u>Palmer v. Buscemi</u>, No. 05 Civ. 10094,

2007 U.S. Dist. LEXIS 72964, at *14-15 (E.D. Mich. Sept. 30, 2007) (holding that a

family court judge and family court referee both "were performing their judicial functions

- nothing more, and nothing less" and therefore were "entitled to judicial immunity");

<u>Holbert v. Cohen-Gallet</u>, No. 05 Civ.1281 (NGG), 2006 U.S. Dist. LEXIS 1869, at *17-

18 (E.D.N.Y. Jan. 9, 2006) ("[Defendant], who serves as a Referee in the . . . Family

Court System, is a judicial officer,. . . and is therefore entitled to immunity for judicial

acts that are not in the clear absence of all jurisdiction.  Presiding over the Plaintiff's

custody modification proceeding was without question a judicial act. . . . Thus,

[Defendant's] actions in the courtroom . . . cannot be grounds for tort liability against

her.").

   To the extent that Wilson asserts claims against Goldstein in her

individual capacity, those claims also must be dismissed, because all of the actions that

Goldstein allegedly took in violation of Wilson's constitutional rights occurred while she

was acting in her capacity as a Court Referee.  Plaintiff's allegations that Defendant

Goldstein "proceed[ed] under color of law, office and authority" and "unlawfully used

the fright and might of the New York Court Systems" demonstrate that he is suing

Goldstein in her capacity as a Family Court Referee. (Cmplt. ¶ 7)

   Referee Goldstein cannot be sued in her individual capacity for acts or

omissions that occurred while she was executing her judicial duties.  <u>See</u> <u>McCulley v.</u>

<u>Chatigny</u>, 390 F. Supp. 2d 126, 130 (D. Conn. 2005) ("Federal judges are . . . absolutely

_____

relevant to the judicial immunity determination – in a context where the parties had
stipulated to her handling of their case – Wilson has cited nothing to this Court
suggesting that Referee Goldstein was obligated under New York law to file an oath of
office.

immune from individual capacity claims for damages when those claims arise out of the conduct of their official judicial duties."); see also Patterson v. Rodgers, No. 10 Civ. 0579 (CSH), 2010 U.S. Dist. LEXIS 48657, at *15-16 (D. Conn. Apr. 28, 2010) ("'"'judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities."'"' (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980) (quoting Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 734-35 (1980)))); McKnight v. Middleton, No. 08 Civ. 03896 (SLT), 2010 U.S. Dist. LEXIS 30093, at *33-35 (E.D.N.Y. Mar. 24, 2010) ("Judge Hepner of the Family Court is likewise dismissed from this case in her individual capacity.  It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions. Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). . . . [Judicial immunity] 'operates to shield judges acting in their official capacity,' DiPasquale v. Milin, 303 F. Supp. 2d 430, 431 (S.D.N.Y. 2004), and bars 'claims against [judicial] defendants in their individual capacities,' Abrahams v. Appellate Div. of the Supreme Court, 473 F. Supp. 2d 550, 557 (S.D.N.Y. 2007).").

###### C. **Guardian Ad Litem Barnes**

Plaintiff's § 1983 claims against guardian ad litem Barnes must likewise be dismissed on immunity grounds.

Defendant Barnes may not be sued for her actions in her capacity as guardian ad litem because it is well-established that guardians ad litem and "law guardians" are protected by quasi-judicial immunity.  See Yapi v. Kondratyeva, 340 Fed. Appx. 683, 685 (2d Cir. 2009) (unpublished opinion) ("[T]he law guardian and her director were entitled to quasi-judicial immunity." (citing Bluntt v. O'Connor, 291

A.D.2d 106, 116-19 (4th Dep't 2002) (holding that guardian ad litem was protected by quasi-judicial immunity and noting that "most courts that have considered suits by disgruntled parents against attorneys appointed by courts to protect children in custody disputes have granted, on public policy grounds, absolute quasi-judicial immunity to the attorneys for actions taken within the scope of their appointments"); Bradt v. White, 190 Misc. 2d 526, 528-36 (Sup. Ct. Greene Cty. 2002) (holding that a guardian for a child in a custody proceeding "has quasi-judicial immunity from civil liability for conduct directly relating to the performance of the law guardian's duty to further the best interests of the children")); Lewittes v. Lobis, 164 Fed. App'x 97, 98 (2d Cir. 2005) (unpublished opinion) ("[W]hether as a 'law guardian' or guardian ad litem, [defendants] are also entitled to quasi-judicial immunity."); McKnight, 2010 U.S. Dist. LEXIS 30093, at *45 ("Absolute immunity has extended to . . . guardians ad litem in child custody proceedings . . . ." (citations omitted)); Dowlah v. Dowlah, No. 09 Civ. 2020 (SLT), 2010 U.S. Dist. LEXIS 22196, at *20-21 (E.D.N.Y. Mar. 9, 2010) ("[A] court-appointed law guardian . . . is also protected by absolute immunity.  The Second Circuit recently applied the common law quasi-judicial immunity to preclude § 1983 liability of a law guardian in a litigant's action arising out of family court proceedings." (citing Yapi, 340 Fed. App'x at 685)); Lewittes v. Lobis, No. 04 Civ. 0155, 2004 U.S. Dist. LEXIS 16320, at *40 (S.D.N.Y. Aug. 19, 2004) (Report and Recommendation) ("[T]he Court agrees with the New York cases and holds that a law guardian or guardian ad litem appointed by the court in a matrimonial action is entitled to quasi-judicial immunity.").

### D.  **Wilson-Polson**

Wilson asserts § 1983 claims against his ex-wife Wilson-Polson, a private citizen.  To prevail on a § 1983 claim, "a plaintiff must show that (1) 'the conduct complained of was committed by a person acting under color of state law,' and (2) 'this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.'" Greenwich Citizens Comm. v. Counties of Warren and Washington Indus. Dev. Agency, 77 F.3d 26, 29-30 (2d Cir. 1996) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981)); see also Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (noting that to succeed on a § 1983 claim a plaintiff must show:  (1) that the "defendants were acting under color of state law" and (2) that "their actions deprived the plaintiff of a right guaranteed by the constitution or laws of the United States").  Here, Wilson's § 1983 claim fails as to Wilson-Polson because she did not act "under color of state law."

"[T]he under-color-of-state-law element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982) (quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948))); see also Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law.").  "Under § 1983, state action may be found when 'there is such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself."'" Abdullahi v. Pfizer,

Inc., 562 F.3d 163, 188 (2d Cir. 2009) (quoting Brentwood Acad., 531 U.S. at 295

(quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974))).

        Here – other than Wilson's vague and conclusory allegations of

"conspiracy" – there is no nexus between Defendant Wilson-Polson and the state that

could give her alleged actions the imprimatur of state action.  "In order to survive a

motion to dismiss on [a] § 1983 conspiracy claim, [the plaintiff] must allege (1) an

agreement between a state actor and a private party; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing

damages."  Ciambriello, 292 F.3d at 324-25 (citing Pangburn v. Culbertson, 200 F.3d 65,

72 (2d Cir. 1999)).

        In Gyadu v. Hartford Insurance Co. – which involved a pro se plaintiff

suing under § 1983 – the Second Circuit explained that "a 'complaint containing only

conclusory, vague, or general allegations of conspiracy to deprive a person of

constitutional rights cannot withstand a motion to dismiss.'"  197 F.3d 590, 591 (2d Cir.

1999) (quoting Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983)); see also

Ciambriello, 292 F.3d at 325 ("'[C]omplaints containing only conclusory, vague, or

general allegations that the defendants have engaged in a conspiracy to deprive the

plaintiff of his constitutional rights are properly dismissed; diffuse and expansive

allegations are insufficient, unless amplified by specific instances of misconduct.'"

(quoting Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993))).

        The Complaint here contains only generalized and conclusory allegations

of conspiracy.  In particular, the Complaint states that Wilson-Polson conspired

        with Carol J. Goldstein. . . , who acting under color of Authority, Office
        and Law, in cooperation, assistance and collusion with Elisa Barnes . . . ,

> as facilitator, intimidator, and Court appointed "Guardian ad litem"
> implemented a scheme to deprive plaintiff of his Constitutionally
> protected fundamental Right as a father, by denying him a relationship
> with his 8 year old Biological daughter, Elisha Wilson. . . .

(Cmplt. ¶ 1)  Wilson further alleges that Wilson-Polson, Barnes, and Goldstein "collectively" and "with Racial animus," "collaborated in the implementation of a concocted malicious series of lies that produced the subterfuge needed for them to deny plaintiff of his fundamental unalienable Right as a Father."  (Id. ¶ 38)  Wilson-Polson is accused of using "the often Racially biased Family Court and its officers to procreate a scheme to . . . deny plaintiff of his . . . relationship with his daughter."  (Cmplt. ¶ 5)

Such vague and conclusory allegations are insufficient to establish that Wilson-Polson acted "under color of state law" and, accordingly, Wilson's § 1983 claims against her must be dismissed.  See Ciambriello, 292 F.3d at 325 ("[Plaintiff's] conspiracy allegations are strictly conclusory.  [Plaintiff] has not provided any 'details of time and place,' Dwares, 985 F.2d at 100, and he has 'failed to specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense,' Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977).  Because [Plaintiff's] factual allegations are inadequate, his § 1983 conspiracy claim must be dismissed.").

**E.    Declaratory Relief**

Wilson also seeks a declaratory judgment that Defendants "have violated the 14th Amendment of the United States Constitution, 42 U.S.C. §1983, by consciously depriving plaintiff of his Fundamental Right of fatherhood." (Cmplt., Prayer for Relief)

As to Referee Goldstein and Defendant Barnes, this claim fails because judicial immunity bars claims for declaratory relief that are retrospective in nature.  See MacPherson v. Town of Southampton, 664 F. Supp. 2d 203, 211 (E.D.N.Y. 2009) ("[T]o

the extent Plaintiffs' declaratory claims are retrospective in nature in that they seek a declaration that the Justices' past enforcement of the Town's rental law has violated the Constitution, they are barred by the doctrine of absolute immunity." (citing <u>LeDuc v. Tilley</u>, No. 05 Civ. 157 (MRK), 2005 U.S. Dist. LEXIS 12416, at *17 (D. Conn. June 21, 2005) ("Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order."))).

　　　　　While "the doctrine of judicial immunity does not shield judges from claims for prospective declaratory relief," <u>LeDuc</u>, 2005 U.S. Dist. LEXIS 12416, at *18, here Wilson's request for declaratory relief is purely retrospective.  He seeks a declaratory judgment that past actions that occurred in the context of the Family Court proceedings before Referee Goldstein violated his constitutional rights.  Wilson has not alleged an ongoing violation.  Under these circumstances, the doctrine of judicial immunity shields Goldstein and Barnes from Wilson's claims for declaratory relief.  <u>See B.D.S. v. Southold Union Free Sch. Dist.</u>, No. 08 Civ. 1319 (SJF), 2009 U.S. Dist. LEXIS 55981, at *57-58 (E.D.N.Y. June 24, 2009) (applying judicial immunity doctrine to claims against state review officer and denying plaintiff's claims for declaratory relief because "plaintiff's claims for judgment declaring that [state review officer's] past conduct violated federal law are retroactive in nature and, thus, are barred by the doctrine of absolute immunity" (citing <u>Boyland v. Wing</u>, 487 F. Supp. 2d 161, 180 (E.D.N.Y. 2007) (holding that absent a continuing violation of federal law, claims for declaratory relief against state officials are barred by the Eleventh Amendment); <u>Rothenberg v. Stone</u>, 234 F. Supp. 2d 217, 221-22 (E.D.N.Y. 2002) (dismissing plaintiff's § 1983 claims for declaratory relief  on immunity grounds because "the plaintiff's complaint

makes clear that he is seeking declarations that [defendant's] past conduct violated federal law" and "is therefore seeking only retrospective declaratory relief"))); <u>LeDuc</u>, 2005 U.S. Dist LEXIS 12416, at *19 (judicial immunity barred plaintiff's claims for declaratory relief against a state court judge where the claim was "retrospective . . . because rather than seeking relief for a future or ongoing violation, his claim is 'intertwined with [his] claim for money damages,' for it asks the Court to 'declare whether a past constitutional violation occurred'" (quoting <u>Nat'l Audobon Soc'y, Inc. v. Davis</u>, 307 F.3d 835, 848 n.5 (9th Cir. 2002)).

The OAG likewise cannot be sued for declaratory relief, because the Eleventh Amendment protects state agencies from suits for both damages and equitable relief.  <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. . . . This jurisdictional bar applies regardless of the nature of the relief sought." (citations omitted)).

No relief under § 1983 – whether for damages or declaratory relief – is available against Wilson-Polson because the allegations against her fail to establish that she acted "under color of state law."

## III.   <u>LEAVE TO AMEND</u>

Finally, this Court must determine whether its dismissal of the Complaint is with or without prejudice.  The Second Circuit has cautioned that a <u>pro se</u> litigant's complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."

Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991).  Here, however, this Court will not

grant leave to amend because – even under the most liberal reading of the Complaint –

there is no indication that a valid claim might be stated.

A court may dismiss a claim without leave to amend when "the substance

of the claim pleaded is frivolous on its face."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d

Cir. 1988) (citing Moorish Sci. Temple v. Smith, 693 F.2d 987, 990 (2d Cir. 1982)).  An

action is considered frivolous when, inter alia, "the claim is 'based on an indisputably

meritless legal theory.'"  Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)

(quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

Here, Wilson's § 1983 claim as to each Defendant is subject to

fundamental flaws not subject to cure:  the claims against Goldstein, Barnes, and the

OAG are barred by the Eleventh Amendment or judicial immunity, and the claim against

Wilson-Polson fails because she is a private citizen who does not meet § 1983's state

action requirement.  Accordingly, granting leave to amend would be futile, because

Wilson cannot establish a viable § 1983 claim against any of the Defendants.  Where

granting leave to amend is futile, dismissal with prejudice is appropriate. See, e.g., Cuoco

v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [pro se plaintiff's]

causes of action is substantive; better pleading will not cure it.  Repleading would thus be

futile.  Such a futile request to replead should be denied." (citing Hunt v. Alliance N. Am.

Gov't Income Trust, 159 F.3d 723, 728 (2d Cir. 1998)); see also Peterec-Tolino v. New

York, 364 Fed. Appx. 708, 711 (2d Cir. 2010) (unpublished opinion) (pro se plaintiff's

§ 1983 claims against private citizens and defendants with Eleventh Amendment

immunity were properly dismissed without leave to amend because "[a]ny amendment

would be futile").

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are

GRANTED. This action is dismissed with prejudice. The Clerk of the Court is directed

to terminate Defendants' motions to dismiss. (Docket Nos. 11, 13, 14) The Clerk of the

Court is further directed to close this case.

The Clerk of the Court is directed to serve a copy of this Order, via

certified mail, on Plaintiff Dwayne Wilson, 244 Fifth Avenue, Suite 2160, New York,

New York 10001.

Dated: New York, New York
       September 22, 2010

                              SO ORDERED.

                              Paul G. Gardephe
                              United States District Judge